CASE 21—PETITION EQUITY—FEBRUARY 10.

# City of Ashland v. Culbertson.

APPEAL FROM BOYD CIRCUIT COURT.

1. CONSTITUTIONAL LAW—SUBMISSION OF QUESTION TO VOTERS.—The submission of a question to the voters of a municipality as to whether they will create an indebtedness, under the provisions of sec. 157 of the Constitution, must be at a regular election.

2. CONSTITUTIONAL LAW—EXTENT OF INDEBTEDNESS.—The two per centum increase of indebtedness which cities and towns are authorized to incur under the provisions of sec. 158 of the Constitution, where the indebtedness of such city or town at the time of the adoption of the Constitution exceeded the limit prescribed by that section, is permissible without regard to the amount of the indebtedness existing when the Constitution was adopted, providing the same was in excess of the constitutional limit; so long as that indebtedness shall not have been reduced below the limit, and so long as any increase of indebtedness after the adoption of the Constitution has not absorbed the two per centum provided for, such city or town may increase its indebtedness to the extent of two per centum of the value of the taxable property therein.

3. CONSTITUTIONAL CONSTRUCTION.—The amount of the indebtedness created by the issual of bonds is the face value of the bonds; the interest on the bonds was not intended by the Constitution to be a part of the indebtedness, but is merely an incident to it.

CHAS. H. FISK AND JOHN F. HAGER FOR APPELLANT.

D. W. STEELE, JR. AND R. C. BURNS FOR APPELLEE.

(Briefs not in record.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The question to be considered is whether or not the city of Ashland may issue bonds to the amount of $50,000, for construction of a building to be used for its common schools,

[ 11 ]

the chief grounds of objection being (1) that the election authorizing the creation of the debt was not held solely for the purpose, but was held at the general election of county officers in November, 1894. And (2) that the issual of the bonds would create an indebtedness of the city in excess of that authorized by the Constitution.

The first objection has been answered by this court in Belknap, &c. v. City of Louisville, &c., 99 Ky., 474, where it was held (Judge Landes dissenting), that the submission of such questions to the voters, must be at a regular election. It may be observed here that the notice for the election and the manner of conducting it seem to have been in substantial accord with the requirements of the Constitution and the statutes. The vote stood, for the issual of the bonds, 925, and against it, 185, out of a total vote at the election of 1,226.

The proposition therefore carried, under section 157 of the Constitution, as construed in the case cited.

As to the second objection, it appears that on September 28, 1891, when the Constitution was adopted, the city was indebted beyong the constitutional limit of 5 per centum "on the value of the taxable property therein." The amount of this excess is estimated by counsel for the city at something like $100,000, and by counsel for the tax payer, Culbertson, at more than double this sum. And an interesting discussion is indulged in as to what items are to be taken into account in fixing the exact amount of the indebtedness at the given time. We regard this question as wholly immaterial. It is admitted on all sides that the limit had been exceeded at that time, and it does not matter how much. After providing the limit in section 158, the framers of the Consti-

tution, in plain recognition of the fact that in some of the cities of the Commonwealth the limit had been doubled already, proceeded in the same section to provide that "If, at the time of the adoption of the Constitution, the aggregate indebtedness, bonded and floating, of any city, town, county, taxing district, or other municipality, including that which it has or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding 2 per centum, and no such county, taxing district, or other municipality, in an amount exceeding 1 per centum, in the aggregate, upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless, in cases of emergency, the public health or safety should so require."

This 2 per centum increase, as was distinctly held in Holzhauer v. City of Newport, 94 Ky., 406, is permissible independently of the amount of the indebtedness existing when the Constitution was adopted, provided such indebtedness is already in excess of the constitutional limit. And this provision for such increase may be taken advantage of by any city whose debt was at the limit when the Constitution was adopted, so long as that indebtedness shall not have been reduced below the limit, and, so long, of course, as any increase of indebtedness after the adoption of the Constitution has not absorbed the 2 per centum provided for.

It is in virtue of this provision that the city bases its right to increase its indebtedness. Its indebtedness was at

City of Ashland v. Culbertson.

the limit in September, 1891; it has not been reduced below the limit since then, and the only increase of indebtedness since that date is about $10,000, which it admits is to be taken into account in estimating the extent to which any increase of its indebtedness is to be permitted.

If this new indebtedness of $10,000 be deducted from the amount of increase permitted, the 2 per centum clause of the Constitution, it appears, that there still remains a margin large enough to authorize the issual of these bonds, unless, as contended by appellee, we are to estimate the interest to be earned on the bonds as a part of the indebtedness incurred by the issual. This, we think, can not be done.

The indebtedness created by the issual of bonds to the amount of $50,000, is the face of the bonds. The term "indebtedness," as used in the Constitution, was not intended, as we think, to include future interest. The law makers were not looking at the incident of the indebtedness, but to the indebtedness proper.

In our opinion, the chancellor erred in enjoining the city from issuing the bonds in question, and the judgment is therefore reversed for proceedings consistent herewith.